UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ANTHONY JEANTY,**

    **Plaintiff,**

v.                                            **Case No. 8:22-cv-599-AAS**

**HILLSBOROUGH COUNTY,**

    **Defendants.**
_____/

## ORDER

Defendant Hillsborough County (the County) moves for summary judgment and requests the court deny Plaintiff Anthony Jeanty's discrimination claims and enter judgment in favor of the County. (Doc. 24). Mr. Jeanty opposes the County's motion. (Doc. 25). For the reasons stated below, the County's motion is denied.

**I.   BACKGROUND**[1]

Mr. Jeanty alleges the County unlawfully discriminated against him due to his physical disability, in violation of the Americans with Disabilities Act (ADA) and the Florida Civil Rights Act (FCRA). (Doc. 1). Mr. Jeanty has been employed by the County since 1998. (Doc. 23, ¶ 1). Currently, and at all times

---

[1] This background mainly derives from the parties' joint statement of undisputed facts. (*See* Doc. 23).

1

relevant to this action, Mr. Jeanty serves as a Utilities Maintenance Operator for the County's Public Utilities Department (Maintenance Operator). (*Id.*, ¶ 2).

In May 2015, Mr. Jeanty notified his supervisor he suffered from partial paralysis in his right hand and requested disability accommodation. (*Id.*, ¶¶ 15, 17). On June 1, 2015, Mr. Jeanty's physician completed an ADA Medical Certification Form confirming Mr. Jeanty's physical disability. (*Id.*, ¶ 18). Mr. Jeanty had approximately 40% mobility in his right hand, had limited or no fine motor skills in his right hand, and could not perform any work requiring the repetitive use of his right hand. (*Id.*, ¶ 19).

On June 11, 2015, Mr. Jeanty attended a meeting with a Human Resources representative and his supervisor to discuss his request for disability accommodation. (*Id.*, ¶ 20). On October 16, 2015, the County sent Mr. Jeanty a letter informing him of his accommodations that became in effect on July 1, 2015. (See Doc. 24-3, pp. 2–4). Mr. Jeanty's disability accommodations include:

> [P]erform eight (8) to ten (10) of the yearly inspections on fire hydrants, maintenance on six (6) to seven (7) meters or four (4) to five (5) meter box inspections but would not be able to work on any of the five (5) year inspections. Also, you will be exempt from overtime work to avoid excursion as it relates to your disability.

(*Id.*).

Several times from 2015 through 2017, Mr. Jeanty requested to work overtime but was denied due to his disability accommodations. (*See* Doc. 24-3, pp. 4–5). Mr. Jeanty inquired with the County about how to get his accommodations changed and was informed that his physician needed to change Mr. Jeanty's physical restriction before he could be permitted to work overtime.[2] (Doc. 23, ¶ 34).

On June 27, 2017, Mr. Jeanty requested to perform overtime work again. (Doc. 24-3, p. 10). This request was then forwarded to Richard Cummings, Division Director, Field Maintenance Services, warning that Mr. Jeanty may "push this on up into the Human Resources realm." (*Id.*). Around that same time, Mr. Jeanty's request to work overtime was granted. (Doc. 41-2, p. 53).

On July 29, 2022, after this action was filed, Mr. Jeanty obtained an updated ADA Medical Certification Form. (Doc. 23-3, pp. 6–9). The form is essentially the same as Mr. Jeanty's 2015 ADA Medical Certification Form other than including a note stating, "patient can work overtime." (*See* Doc. 23-3, p. 9). Neither the 2015 ADA Medical Certification Form nor the 2022 ADA Medical Certification Form specifically question whether an employee can

---

[2] The 2015 ADA Medical Certification Form does not mention overtime. (*See* Doc. 24-2, pp. 8–11).

3

work overtime. (*See* Doc. 23-3, pp. 6–9; Doc. 24-2, pp. 8–11).

Mr. Jeanty filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging disability discrimination.[3] (Doc. 1, ¶ 25). The EEOC investigated Mr. Jeanty's charge and entered a for cause finding. (*Id.*, ¶ 26). On December 16, 2021, Mr. Jeanty received his notice of right to sue from the EEOC. (Doc. 1, ¶ 27). On March 14, 2022, Mr. Jeanty brought this action against the County. (Doc. 1).

The County now moves for summary judgment arguing Mr. Jeanty cannot establish a prima facie case of disability discrimination because it had a legitimate reason to deny Mr. Jeanty's request to work overtime. (Doc. 24). In response, Mr. Jeanty argues he established a prima facie case of disability discrimination and the County's proffered reason for denying Mr. Jeanty's request to work overtime is pretext for discrimination. (Doc. 25).

## II. STANDARD

Summary judgment should be granted only if "there is no genuine issue as to any material fact and [ ] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party requesting summary judgment bears "the initial burden to show the district court, by reference to materials on file,

---

[3] It is unclear when Mr. Jeanty filed the charge of discrimination because it is not included in the record.

4

that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The party requesting summary judgment always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992). The mere existence of any factual dispute, however, will not automatically require denial of a motion for summary judgment. Instead, only factual disputes material preclude entry of summary judgment. *Lofton v. Sec'y of the Dep't of Children*

*& Family Serv.*, 358 F.3d 804, 809 (11th Cir. 2004).

## III. ANALYSIS

Mr. Jeanty brings this disability discrimination action under the ADA and the FCRA, arguing the County did not allow him to work overtime because of his physical disability. (Doc. 1). The *McDonnell Douglas* burden-shifting framework applies.[4] *See Barber v. Cello P'ship*, 808 F. App'x 929, 934–35 (11th Cir. 2020). First, the plaintiff must establish a prima facie case of discrimination. *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If he does so, then the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id*. If it does so, then the plaintiff must show the reason is pretext. *Id*. at 804–05.

### A. Prima Facie Case[5]

Under the ADA, an employer is prohibited from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

---

[4] The Eleventh Circuit has determined that disability discrimination claims under the ADA and FCRA are subject to the same burden-shifting analysis. *See Monroe v. Fla. Dep't of Corr.*, 793 F. App'x 924, 926 (11th Cir. 2019) (citing *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255 (11th Cir. 2007)).

[5] Discrimination claims under the ADA and FCRA can be analyzed together. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007).

compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The FCRA also protects employees from discrimination based on disability. *See Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1266 (11th Cir. 2014) (noting that FCRA disability discrimination claims are analyzed under the same framework as ADA claims). Florida courts have construed the FCRA in conformity with the ADA. *See Wimberly v. Sec. Tech. Grp., Inc.*, 866 So.2d 146, 147 (Fla. 4th DCA 2004).

"To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that at the time of the adverse employment action, he (1) had a disability, (2) was a qualified individual, and (3) was subjected to unlawful discrimination because of his disability." *Batson v. Salvation Army*, 897 F.3d 1320, 1326 (11th Cir. 2018) (citing *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255–56 (11th Cir. 2007)).

**(1) Disability**

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Mr. Jeanty suffers from partial paralysis in his right hand causing 40% mobility. The County does not dispute

7

this condition qualifies as a physical disability.

### (2) Qualified Individual

A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005) (quoting *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000)). An individual must show either that he can perform the essential function of his job without accommodation, or, failing that, that he can perform the essential functions of his job with a reasonable accommodation. *See Davis*, 205 F.3d at 1305 (citing *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 (11th Cir. 1997)). "An individual who cannot perform the essential job functions, even with accommodation, is not qualified and therefore not covered under the ADA." *Perry v. City of Avon Park*, 662 F. App'x 831, 834 (11th Cir. 2016) (citing *D'Angelo*, 422 F.3d at 1229).

"[E]ssential functions" of a position are "the fundamental job duties of the employment position the individual with a disability holds." 29 C.F.R. § 1630.2(n)(1). "Determining whether a particular job duty is an essential function involves a factual inquiry to be conducted on a case-by-case basis."

*Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 (11th Cir. 2001). Although an employer's view is accorded weight, it cannot be conclusive. *See Holly*, 492 F.3d at 1258.

At all times relevant to this action, and until today, Mr. Jeanty has been employed by the County as a Maintenance Operator. In 2015, Mr. Jeanty requested accommodation for his disability. After evaluation, the County provided accommodations enabling Mr. Jeanty to perform the essential functions of his job. Nothing in the record suggests Mr. Jeanty failed in performing those essential functions from the date the accommodations were imposed until today. The County is estopped from now arguing Mr. Jeanty is not qualified to perform the job he has been performing for over seven years.

Mr. Jeanty is a qualified individual who can perform the essential functions of a Maintenance Operator, with accommodations.

### (2) Unlawful Discrimination

The County denied Mr. Jeanty's request to work overtime because of his disability accommodations. An internal email states that "[i]t has been deemed that anyone that has an ADA accommodation would not be eligible for overtime due to uncontrollable circumstances that may occur during nonstandard hours." (Doc. 24-3, p. 4).

9

Qualified individuals with disabilities are entitled to enjoy the same terms, conditions, benefits, and privileges as non-disabled employees. *Spears v. Creel*, 607 F. App'x 943, 948 (11th Cir. 2015). Working overtime hours allows employees to earn supplemental income in addition to their regularly salary.[6] Working overtime is a benefit and privilege for an employee.[7]

The County acknowledges the sole reason Mr. Jeanty was not permitted to work overtime was due to his accommodation, which was imposed because of his physical disability. Thus, the County engaged in unlawful discrimination against Mr. Jeanty when it denied Mr. Jeanty's request to work overtime due to his accommodation and disability.

### B. Legitimate Reason

To satisfy the second step of the *McDonnell Douglas* standard, the defendant must articulate "a legitimate, nondiscriminatory reason for the adverse employment decision." *Walker v. Mortham*, 158 F.3d 1177, 1183–84

---

[6] Under the Fair Labor Standards Act, wage employees working in more the maximum hour work week must receive compensation at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C.A. § 207(a).

[7] In 2015, when Mr. Jeanty was prohibited from working overtime, he earned $37,000 annually. In 2016, Mr. Jeanty earned $35,000 annually. Around June 2017, the County allowed Mr. Jeanty to work overtime, and he earned $54,000. In 2018, Mr. Jeanty's full year of working overtime, he earned $78,000. (*See* Doc. 24-1, pp. 64–65, 77).

10

(11th Cir. 1998). While this burden is not onerous, the defendant must do more than present a hypothetical reason; "instead, it must raise a genuine issue of fact as to whether it discriminated against the plaintiff by making that decision." *Id.* at 1184.

The County contends its decision to exempt Mr. Jeanty from overtime work was to accommodate him, not discriminate against him. The County asserts it made this decision because overtime work would be excessively repetitive and strenuous given Mr. Jeanty's physical restrictions. For purposes of summary judgment, this is a sufficient legitimate, nondiscriminatory reason for the adverse employment decision.

Thus, the burden shifts back to Mr. Jeanty to provide evidence that the County's proffered reason is pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804–05.

### C. Pretext

The court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.

11

1997). The court "must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id*.

Although Mr. Jeanty's 2015 accommodations remain in effect, the County allowed Mr. Jeanty to work overtime in 2017 and he continues to do so today. There is no evidence Mr. Jeanty is unable to perform this overtime work or that the County is dissatisfied with his performance. This casts doubt on the County's contention Mr. Jeanty could not work overtime because of his accommodations. It is also unknown what evidence supports the County's decision to restrict Mr. Jeanty to no overtime work when nothing in the 2015 ADA Medical Certification Form references overtime limitations.

A reasonable jury could conclude that the County's reason is pretext and that the County discriminated against Mr. Jeanty based on his disability by prohibiting him from working overtime. Thus, summary judgment on Mr. Jeanty's discrimination claims is not warranted.

### IV. CONCLUSION

For the reasons stated above, the County's motion for summary judgment (Doc. 24) is **DENIED**.

**ORDERED** in Tampa, Florida on December 22, 2022.

*Amanda Arnold Sansone*

AMANDA ARNOLD SANSONE
United States Magistrate Judge